# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHARONE HUBERT,
    *Plaintiff*,

v.                                                      No. 3:21-cv-00094 (VAB)

DEPARTMENT OF CORRECTIONS,
    *Defendant.*

## RULING AND ORDER ON MOTION TO DISMISS

Sharone Hubert ("Ms. Hubert" or "Plaintiff") has sued the Department of Corrections

("DOC" or "Defendant") for damages and other equitable relief arising under Title VII of the

Civil Rights Act of 1964, § 706, Title 42 U.S.C. § 2000, as amended, Title 42 U.S.C. § § 1981,

1983, 1985 1986, 1988; Connecticut General Statutes § 46a-60; and the common law of the State

of Connecticut. Compl. at 1, ECF No. 1 (Jan. 20, 2021) ("Compl."). Specifically, Ms. Hubert is

suing for "emotional and psychological damages, inconvenience, mental anguish[,] and loss of

enjoyment of life as a result [of] the egregious and criminal conduct of the [D]efendant['s]

employees." *Id.*

DOC has moved to dismiss Ms. Hubert's Complaint. Def.'s Mot. to Dismiss, ECF No. 26

(May 17, 2022); Def.'s Mem. of Law in Support of its Mot. to Dismiss, ECF No. 26-1 (May 17,

2022) ("Def.'s Mem.").

For the reasons explained below, DOC's motion to dismiss is **GRANTED**.

All of Ms. Hubert's claims will be dismissed with prejudice.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Ms. Hubert, an African-American woman, is an employee of the DOC. Compl. at 1. She alleges that, at the DOC, she endured sexual harassment, race- and gender-based discrimination, and workplace retaliation, which allegedly resulted in a hostile work environment. *Id*. at 1–2.

Ms. Hubert allegedly began working at DOC on or about February 13, 1998. *Id*. at 1. Ms. Hubert was allegedly subject to sexual harassment, which was the subject of two earlier lawsuits before this Court, both of which were dismissed on summary judgment motions. *Hubert, et al. v. Dep't of Corr.*, *et al*., No. 14-CV-476 (VAB), 2018 WL 1582508 (Mar. 30, 2018) (hereinafter *Hubert I*; *Hubert, et al. v. Dep't of Corr.*, *et al.*, No. 17-CV-248 (VAB), 2019 WL 5964973 (Nov. 13, 2019) (hereinafter *Hubert II*). Ms. Hubert filed a third lawsuit in 2019 against the DOC, alleging state law claims of discrimination, retaliation, or hostile work environment under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, and federal claims under Title VII for sex- and race-based discrimination, hostile work environment, and retaliation. *Hubert v. Dep't of Corr., et al.*, No. 19-CV-01323 (VAB), 2020 WL 4938327 (Aug. 23, 2020) (hereinafter *Hubert III*). That case was dismissed for failure to state a claim upon which relief may be granted. *Id*. at *9.

Ms. Hubert then brought this lawsuit in 2021, in which she alleges that since she "filed a sexual harassment lawsuit, the harassment has grown out of control." Compl. at 2. Specifically, she claims,

> [she] was placed in chemical units while working, vents that
> released Nano gas, skin burned, pressure to head ut[i]lizing
> electricity, drones. V2k, Drones that carry sounds, synthe[t]ic
> telepathy, body over heating, hair shedding using drones. Body
> m[a]nipulat[i]on, face altering, brain cloning[,] skin[] burned,
> blurred vision, tooth pain, caps k[n]ocked out of mouth. Latching,

shape shif[t]ing, altering one appe[a]rance to look like someone else. This is done by utilizing the light that look like the sun, Non[-c]onsensual [e]xperimentation, remote n[e]ural monitoring using directed energy weapons and electronic harassment, gang [] stalking work place mobbing pressure to uterus ut[i]lizing drones. Followed by a simulated sun with a[n] eye attached to it followed through[o]ut the [P]laintiff['s] home as if living for som[e]one, causing face disfigurement. The heavy UV light causes cancer. Heavy hits to the head by staff repeat[e]dly on duty and off duty. Electrical shocks when showering and recorded while in shower. Skin repeat[e]dly burned legs, feet, face disfigure due to pressure to entire body and electric[i]ty. Placed in a gang stalking program followed 24 [] h[ou]rs a day. Accounts hacked, passwords changed, the feeling someone is having sex with you, recording of dreams, sodomy with electric[i]ty. Run off the road to and from work. Vagina hit repeat[e]dly while in [the] shower and body burned. Property damaged, pipes broken. The [P]laintiff has [] reported this numerous [] times to Department [o]f Corrections Officials, a video was provided of the same drone ith a eye attached to it, New haven jail, Hartford Jail, Cheshire C[orrectional Institution] and U[CONN]. A[n] eye stre[t]ching through her entire bathroom, The [P]laintiff was forced out of work for reporting this harassment, sent for a fit for duty and accused of being problematic.

Compl. at 2.

### B.  Procedural History

The Court assumes familiarity with the early procedural background of this case. *See* Ruling and Order on Motion to Dismiss, ECF No. 21 (Mar. 4, 2022) ("MTD Order").

On May 17, 2022, DOC moved to dismiss Ms. Hubert's Complaint on the basis that this Court lacks subject matter jurisdiction over the Ms. Hubert's alleged claims against Defendant because Ms. Hubert's alleged claims are barred by the Eleventh Amendment and Sovereign Immunity. Mot. to Dismiss, ECF No. 26 (May 17, 2022).

On that same day, DOC moved to dismiss Ms. Hubert's Complaint on the basis that Ms. Hubert failed to state a claim on which relief can be granted. *Id.*.

On June 08, 2022, Ms. Hubert filed a motion to proceed without prejudice in response to DOC's Motion to Dismiss. Pl.'s Mot. to Proceed Without Prejudice, ECF No. 27 (June 08, 2022) ("Pl. First Resp.").

On that same day, Ms. Hubert filed another motion to proceed without prejudice in response to DOC's Motion to Dismiss. Pl.'s Mot. to Proceed Without Prejudice, ECF No. 28 (June 08, 2022) ("Pl. Sec. Resp.").

On June 17, 2022, DOC filed their reply to Ms. Hubert's first and second responses to the Motion to Dismiss. Def. Reply to Pl. First and Second Resp. to Def.'s Mot. to Dismiss, ECF No. 29 (June 17, 2022)("Def. Reply").

On June 27, 2022, Ms. Hubert filed an opposition memorandum to Defendant's motion to dismiss. Pl. Opp'n Mem. to Def.'s Mot to Dismiss, ECF No. 30 (June 27, 2022) ("Pl. Opp'n Mem.").

## II.   STANDARD OF REVIEW

### A.  Motion to Dismiss for Lack of Subject Matter Jurisdiction

A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also

resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822F.3d 47, 56 (2d Cir. 2016). "A defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of

factual problems in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

### B.  Motion for Dismiss for Failure to State a Claim

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555,

570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

### C.  The Doctrine of *Res Judicata*

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims because of previous rulings on the merits of those claims. "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as '*res judicata.*'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). Together, the doctrines of claim and issue preclusion "are designed to protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (alteration in original) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)).

The preclusive effect of a prior federal court judgment depends on the basis for jurisdiction in the prior action. For judgments in federal question cases, courts apply "'uniform federal rule[s]' of *res judicata*." *Taylor*, 553 U.S. at 891 (alteration in original).

The doctrine of claim preclusion prevents a claim from being relitigated if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018) (internal quotation marks omitted). Connecticut law also requires "an adequate opportunity to fully and fairly litigate the claim." *Jaeger*, 936 F. Supp. 2d at 94 n.1 (internal quotation marks omitted).

The related doctrine of issue preclusion "bars a party from raising an issue of law or fact in a second suit that the party had a full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." *Irish Lesbian & Gay Org.*, 143 F.3d at 644 (alterations in original) (internal citations and quotation marks omitted).

"It is well established that the party asserting the affirmative defense of [*res judicata*] bears the burden of establishing its applicability." *Ventres v. Goodspeed Airport, LLC,* 301 Conn. 194, 205 (2011) (citation omitted). Nonetheless, a *res judicata* challenge can be raised on a motion to dismiss for failure to state a claim if "all relevant facts are shown by the court's own records." *AmBase Corp. v. City Investing Co. Liquidating Tr.*, 326 F.3d 63, 72 (2d Cir. 2003) (quoting *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)). In considering a *res judicata* defense on a Rule 12(b)(6) motion, "a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court." *Chien v. Skystar Bio Pharm. Co.*, 623 F. Supp. 2d 255, 260 (D. Conn. 2009) (citing *AmBase*, 326 F.3d at 72–73), *aff'd*, 378 F. App'x 109 (2d Cir. 2010).

## III.   DISCUSSION

DOC moves to dismiss the entire Complaint, arguing that

> (1) [a]ll claims brought pursuant to 42 U.S.C. § 1981, 1983, 1985, 1986, and 1988 against the State of Connecticut are barred by the Eleventh Amendment and Sovereign Immunity and must be dismissed for lack of subject matter jurisdiction; (2) [a]ll claims brought pursuant to Conn. Gen. Stat. § 46a-60 are barred by the Eleventh Amendment and Sovereign Immunity and must be dismissed for lack of subject matter jurisdiction; (3) [a]ll claims brought pursuant to Connecticut common law are barred by the Eleventh Amendment and Sovereign Immunity and must be dismissed for lack of subject matter jurisdiction; (4) [s]ome of [Ms. Hubert's] claims are barred by *res judicata*; (5) [s]ome of [Ms. Hubert's] Title VII claims are time barred and must be dismissed; (6) [a]ll claims brought pursuant to Title VII must be dismissed because [Ms. Hubert] has not pled that she was subjected to any adverse employment action, nor has she pled that such adverse employment was causally related to any protected class or protected activity under Title VII, and Plaintiff has not pled that she was subjected to a hostile work environment[.]

Def.'s Mem. at 1.

The Court will address each of these claims in turn.

### A. The 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 Claims

The Eleventh Amendment provides a jurisdictional bar to private suits against states and their agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). "As a general rule, state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." *Jackson v. Battaglia*, 63 F. Supp. 3d 214, 219–20 (N.D.N.Y. 2014) (citation omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)).

9

DOC argues that § 1981, 1983, 1985, 1986, and 1988 claims are barred by sovereign immunity, and therefore, must be dismissed for lack of subject matter jurisdiction.  Def.'s Mem. at 1.

The Court agrees.

Congress has not abrogated the State of Connecticut's sovereign immunity under §§ 1981 and 1983, and the State of Connecticut has not consented to be sued under §§ 1981 and 1983. *See Coger v. Connecticut*, 309 F.Supp.2d 274, 281 (D.Conn.2004) ("[C]ourts have held that Congress has not abrogated the state's immunity from suit under 42 U.S.C. §§ 1981 or 1983" and "the State of Connecticut has not waived its sovereign immunity under those statutes." (internal quotation marks and citations omitted)). Therefore, DOC is immune from suit under the 42 U.S.C. §§ 1981, 1983. The same reasoning applies to Ms. Hubert's claims under 42 U.S.C. §§ 1985, 1986, and 1988. *See Ammann v. Connecticut*, No. 3:04CV1647(MRK), 2005 WL 465401, at *1 (D. Conn. Feb. 10, 2005) ("42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988, do not abrogate a state's sovereign immunity.").

Accordingly, DOC's motion to dismiss for lack of jurisdiction of Ms. Hubert's 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988 claims will be granted, and dismissed with prejudice.

## B.    Conn. Gen. Stat. § 46a-60 Claims

"[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (2d Cir. 2009).

DOC argues that "claims [under] Conn. Gen. Stat. § 46a-60, all such claims must be dismissed because the State of Connecticut has not consented to be sued in federal court on claims brought pursuant to this statute." Def. Mem. at 11. DOC contends that "all claims brought

under Conn. Gen. Stat. § 46a-60, also known as the Connecticut Fair Employment Practices Act ("CFEPA"), are barred by the Eleventh Amendment to the United States Constitution and by sovereign immunity." *Id.*

The Court agrees.

Ms. Hubert makes no argument that her claims are not barred by sovereign immunity. Indeed, "it is well-established that such claims against a state agency are, in fact, barred by sovereign immunity." *Mallison v. Conn. Off. of Early Childhood*, No. 3:21-CV-1641 (SVN), 2022 WL 6771028, at *11 (D. Conn. Oct. 11, 2022) (collecting cases).

Accordingly, DOC's motion to dismiss this statutory claim will be granted, and the claim will be dismissed with prejudice.

## C.     The Connecticut Common Law Claims

DOC argues that "that [Ms. Hubert] asserts claims pursuant to Connecticut common law, all such claims are again barred by sovereign immunity and the Eleventh Amendment." Def. Mem. at 13. DOC contends that "[c]laims brought pursuant to Connecticut common law are not based on a waiver or Congressional abrogation of the State's sovereign immunity from suit." *Id*. DOC argues that "the Eleventh Amendment bars this common law claim, just as it bars Plaintiff's federal claims and the Conn. Gen. Stat. § 46a-60 claim." *Id*.

The Court agrees.

"In order to be subject to suit in federal court, a state must expressly and unambiguously waive its Eleventh Amendment immunity or Congress must clearly express its intention to revoke the immunity in language of a particular statute." *Martinez v. Conn. S. Library*, 817 F. Supp. 2d 28, 41 (D. Conn. 2011). Here, Ms. Hubert asserts common law claims, *see* Compl. at 1 ("Connecticut General Statutes 46a-60 and the common law of the State of Connecticut"), and

"there is neither such divestment from Congress, since intentional infliction of emotional distress is a common law claim, nor has Connecticut expressly waived its sovereignty immunity." *Volpe v. Conn. Dep't of Mental Health & Addiction Servs.*, 88 F. Supp. 3d 67, 76 (D. Conn. 2015) (citation omitted). In addition, there is no argument that – or can Ms. Hubert plausibly argue – the State of Connecticut has given consent to any statute "that abrogated its Eleventh Amendment sovereignty immunity with regards to this cause of action." *Id.*

Accordingly, DOC's motion to dismiss her common law claims will be granted, and all of these claims will be dismissed with prejudice.

**D.     The Title VII Claims**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, . . . sex." 42 U.S.C. § 2000e-2(a)(1). Under Title VII, claims of employment discrimination and retaliation are governed by the burden shifting analysis the Supreme Court established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citation omitted) (analyzing Title VII sex discrimination claims); *Grey v. Norwalk Bd. of Educ.*, 304 F. Supp. 2d 314, 321–22, 328–29 (D. Conn. 2004) (evaluating constructive discharge and hostile work environment claims under Title VII and CFEPA); *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177–78 (2d Cir. 1996) (in the context of a Title VII retaliation claim). Under this framework, Ms. Hubert bears the initial burden of establishing a *prima facie* case. *See Weinstock*, 224 F.3d at 42.

"To survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim."

*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 228–29 & n.10 (2d Cir. 2014). Moreover, to establish a prima facie racial discrimination claim under Title VII, "a plaintiff must show that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he was subject to an adverse employment action; (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination based on race." *Woods v. Ruffino,* 8 F. App'x 41, 42 (2d Cir. 2001) (citations omitted). In addition, "for a [Title VII] retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015).

In addition to lacking jurisdiction over any of Ms. Hubert's constitutional claims under 42 U.S.C. § 1981, 1983, 1985, 1986, and 1988, these claims as well as her remaining federal claim under Title VII have been brought before this Court before on numerous occasions. As a result, Defendants rightly raise the issue of whether these claims should be dismissed under the doctrine of *res judicata*.

DOC argues that "this is [Ms. Hubert's] fourth civil action filed against the [DOC [,]" and "[m]any of [Ms. Hubert's] vague allegations of sexual harassment and hostile work environment have been fully considered and rejected in the three prior cases." Def. Mem. at 15. Moreover, DOC contends that "[t]o the extent that [Ms. Hubert] is seeking to raise or rely on any of the allegations that were previously addressed and ruled on in her current action, she cannot do so because all of these claims are barred by *res judicata*." *Id.*

The Court agrees.

When a party credibly asserts claim preclusion under the doctrine of *res judicata*, a court

must determine if it is barred from hearing some or all of the claims, or counts, before it. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 (1979) ("[A] judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."). Federal law applies a "transactional test" to determine whether a claim was raised in a prior action. *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (noting that "whether two actions arise from the same transaction or claim" depends on "whether the underlying facts are related in time, space, origin, or motivation" (internal quotation marks omitted)). Thus, the prior action and the current action may involve the same claim even though there was no overlap between the specific causes of action asserted in each complaint.

Here, the Court agrees with DOC that each element of claim preclusion is met with respect to any Title VII claim.

First, for the purposes of claim preclusion, "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'" *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). And Ms. Hubert has had Title VII claims in prior actions adjudicated "on the merits." *Soules v. Conn. Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 55 (2d Cir. 2018). *See Hubert I*, 2018 WL 1582508*27 (granting summary judgment against Ms. Hubert's Title VII and Section 1985, 1986, 1988 claims); *Hubert II*, 2019 WL 5964973 at *9 (dismissing Ms. Hubert's Section 1981 and 1983 claims against DOC); *Hubert III*, 2020 WL 4938327 at *11 (dismissing Ms. Hubert's Title VII claims against DOC*); id.* (dismissing "all of Ms. Hubert's Title VII claims for sexual discrimination, retaliation, and hostile work environment, arising from her January 27, 2010 demotion"); *id.* at n.4 ("[T]his Court has already issued a final adjudication on the merits as to Ms. Hubert's Title VII claims arising from her January 2010 demotion involving the same parties present in the instant

action.") (citation omitted); *id.* at *11 (noting that, as for the claims arising out of an alleged

August 7, 2010 incident, "Ms. Hubert has failed to state a cognizable claim of employment

discrimination"); *id.* at *13 (as for the claims arising out of an alleged August 7, 2010 incident,

Ms. Hubert has failed to state a cognizable claim for retaliation."); *id.* at *14 (noting that, as for

the claims arising out of an alleged August 7, 2010 incident, "Ms. Hubert has failed to state a

cognizable claim for race- or sex-based hostile work environment").

Second, in each of these prior cases, Ms. Hubert was the plaintiff, and thus the prior

actions "involved the plaintiff[] or those in privity with them." *Soules*, 882 F.3d at 55; *see, e.g.*,

*Hubert III*, 2020 WL 4938327 (denying various claims, including under Title VII, against the

Department of Corrections); *Hubert I*, 2018 WL 1582508 (granting summary judgment against

Ms. Hubert's Title VII and Section 1985, 1986, 1988 claims).

Third, the claims asserted in the current action "were, or could have been, raised in the

prior action." *Soules*, 882 F.3d at 55. Because these cases involved Title VII actions, any issue of

employment discrimination arising at the time of those lawsuits could have been brought in those

cases, with the one exception noted below.

Indeed, as this Court stated earlier in this case:

> Ms. Hubert was allegedly subject to sexual harassment, which was the
> subject of two earlier lawsuits before this Court, both of which were
> dismissed on summary judgment motions. Ms. Hubert filed a third
> lawsuit in 2019 against the [Department of Corrections], alleging state
> law claims of discrimination, retaliation, or hostile work environment
> under the Connecticut Fair Employment Practices Act, Conn. Gen.
> Stat. § 46a-60, and federal claims under Title VII for sex- and race-
> based discrimination, hostile work environment, and retaliation.
> That case was dismissed for failure to state a claim upon which relief
> may be granted.

*Hubert v. Dep't of Corr.*, No. 3:21-cv-94 (VAB), 2022 WL 657622, at *1 (D. Conn. Mar. 4,

2022) (hereinafter *Hubert IV* (citations omitted).

In dismissing her last previously filed case in 2020, the Court provided Ms. Hubert an opportunity to amend her Complaint "to the extent the deficiencies noted in [that] ruling [could] be remedied." *Hubert III*, 2020 WL 4938327, at *17. This Court also gave Ms. Hubert a clear deadline for any such proposed amended pleading. *Id.* And if she failed "to file a motion seeking to file an amended complaint by **October 2, 2020**, the Court [would] instruct the Clerk of Court to close [that] case." *Id.* (emphasis in original). Ms. Hubert did not seek to file an amended pleading, and the case was closed. *Hubert III*, Order, No. 3:19-cv-1323, ECF No. 30 ("Plaintiff had until October 2, 2020 to file a motion for leave to file an Amended Complaint, or the case would be dismissed. This date has passed, and yet, Plaintiff has failed to file this motion. Accordingly, this case is dismissed.").

Moreover, in the decision dismissing that case, the Court had noted an outstanding issue to be addressed if Ms. Hubert had filed for leave to file an Amended Complaint: "whether Ms. Hubert made materially false statements under oath in a submission to this Court, and if it is determined that she has, take appropriate action, including but not limited to dismissal of the case with prejudice." *Hubert III*, 2020 WL WL 4938327, at *1. Indeed, DOC claimed that Ms. Hubert had not been an active working employee of the Department, having been placed on administrative leave since July 22, 2019. *Id.* at *3 (stating that, in a letter dated July 22, 2019, "Warden [Ned] McCormick had placed Ms. Hubert on administrative leave with pay effective immediately"); *id.* ("[T]he DOC included a letter dated October 7, 2019 from Doc Human Resource Director Jeffrey Miller to Ms. Hubert informing her that her paid administrative leave would change to unpaid leave."). But Ms. Hubert had represented to the Court that she had not been working or receiving an income in August of 2019, *see id.* (citing to Mot. for Leave to

16

Proceed *In Forma Pauperis*), while DOC claimed to have had her on paid leave between July 22, 2019 through October 7, 2019.

For whatever reason, Ms. Hubert chose not to seek leave to file an Amended Complaint. She therefore did not have to explain this discrepancy. Her failure to file an Amended Complaint by October 2, 2020 on any Title VII-related issue, and the subsequent entering of judgment with respect to that claim, however, forecloses any claim of discrimination plausibly covered by any of these prior cases due to the doctrine of *res judicata*. As a result, the only plausible basis for any Title VII claim by Ms. Hubert would have related to any alleged employment discrimination occurring after October 2, 2020 and before the filing of this lawsuit on January 20, 2021.

But there is nothing in her Complaint or even the related discrimination complaint before the CHRO, detailing any specific act of discrimination during this time period, one presumably when she was not actively working for DOC. In fact, as but one example, her Complaint attaches information related to acts occurring in 2018. *See* Compl. at 7 (providing details from an incident occurring on March 23, 2018). Thus, even if not foreclosed by the doctrine of *res judicata*, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. And this Complaint falls woefully short of that threshold standard.

Accordingly, DOC's motion to dismiss will be granted.

### E.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

For all of the reasons stated before, and because Ms. Hubert has filed many of these claims on successive occasions, even after they had been dismissed without merit, the Court sees no reason to consider further leave to amend her Complaint. *See Tocker v. Philip Morris Companies, Inc.,* 470 F.3d 481, 491 (2d Cir. 2006) ("[A] motion for leave to amend a complaint may be denied when amendment would be futile.") (citation omitted).

Accordingly, her Complaint and any claim in it or reasonably related to it will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, DOC's motion to dismiss is **GRANTED**.

All of Ms. Hubert's claims are dismissed with prejudice.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 17th day of February, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE